## AMERICAN WRITING MACH. CO. v. WAGNER TYPEWRITER CO.

## WAGNER TYPEWRITER CO. v. WYCKOFF, SEAMANS & BENEDICT.

(Circuit Court, S. D. New York. March 10, 1905.)

1. PATENTS—INFRINGEMENT—STOP MECHANISM FOR TYPEWRITING MACHINES.
    The Schulte patent, No. 450,592, for an adjustable mechanism for making column stops on a typewriting machine, claim 9, covers only the particular mechanism disclosed. As so construed, *held* not infringed.

2. SAME.
    The Gathright patents, No. 436,619, claims 4 and 5, No. 452,268, claims 6 and 8, each covering mechanism for making column stops on a typewriting machine, construed, and *held* not infringed.

In Equity. Suits for infringement of letters patent No. 450,592, granted to John H. Schulte April 14, 1891, and letters patent Nos. 436,619 and 452,268, granted respectively September 22, 1890, and May 12, 1891, to Josiah B. Gathright, all relating to column stop mechanism for typewriting machines. On final hearing.

Henry D. Donnelly and Edmund Wetmore, for Wyckoff, Seamans & Benedict and American Writing Machine Company.
Arthur v. Briesen, for Wagner Typewriter Company.

WHEELER, District Judge. In the use of typewriters the writing of short lines and other tabulating work was done by stopping the carriage at the proper place for beginning it by hand. July 22, 1886, John H. Schulte made application for a patent for mechanism to stop the carriage at desired places by moving the feed dog out of the toothed feed racks into a third rack, having teeth at long intervals to engage the dog and stop the carriage at the desired place; and January 15, 1889, Josiah B. Gathright made application for a patent for such mechanism, consisting of a bar hung in the machine in line with the feed racks, carrying adjustable stops to engage with a bar on the carriage as the feed racks should be lifted away from the dog. A patent was granted on this application, numbered 436,619, and dated September 22, 1890, among the claims of which are:

"(4) The combination of stop-rod freely hung to the machine, a stop-lug thereon, and a supplemental spacing-key hung in the machine and adapted

to move the said stop-lug into the path of a portion of the feed-carriage, and connection between the stop-rod and rack-bar, substantially as shown and described.

"(5) In a typewriter, the combination of the usual letter-keys and one or more spacing-keys having mechanism in common for permitting the carriage to move a definite space at each stroke, and a supplemental spacing or skipping key fitted to permit the carriage to move any desired number of said spaces, according to adjustment, said key provided with independent mechanism for releasing the carriage from the detent, and mechanism for simultaneously interposing an adjustable stop, substantially as shown and described."

October 17, 1890, Gathright made another application for a patent for such mechanism by which the dog was lowered away from the feed racks, and a stop on the carriage was made to engage with adjustable stops on the nearly parallel push rod.

April 14, 1891, a patent was granted on Schulte's application, numbered 450,592, containing among other claims:

"(9) In a typewriting machine, the combination, with the carriage, of an adjustable column-stop, a dog to engage the same, and a finger-piece or key to actuate said dog, substantially as and for the purpose set forth."

And May 12, 1891, patent No. 452,268 was granted on Gathright's second application, which contained, among other claims:

"(6) The combination, in a typewriting machine having a carriage feed-rack, of a detent hung to engage the said rack, a rock-shaft journaled in bearings parallel with the feed-rack to be rocked in a direction transverse thereto, and having one arm communicating with the said detent to disengage it from the rack, and another arm or block to be rocked into the path of a fixture of the carriage, and a skipping-key connected with the rock-shaft, substantially as described."

"(8) The combination of a typewriting machine feed-rack, a rock-shaft nearly parallel with the rack wholly independent of the ordinary feed rock-shaft, a lug upon one and stop-blocks adjustably secured upon the other, a detent for the rack, the rock-shaft having one arm to disengage the rack and detent, and another arm connected with a skipping-key, substantially as described."

The first of these suits is brought against alleged infringement of this claim of the Schulte patent by the use of the tabulating mechanism of the Underwood machine, whereby the carriage is raised away from the feed mechanism, and stopped by the engagement of arms on the carriage with projections on the frame.

The second is brought against alleged infringements of these claims of the two Gathright patents, whereby the carriage is raised away from the feed mechanism, and projecting arms are moved into engagement with adjustable stops on a notched bar hung in the machine.

It seems quite obvious, without going more into details of the contrivances, that claim 9 of the Schulte patent cannot be held valid to cover such different mechanism as that of the Underwood machine unless the combination of any tabulating mechanism with the known parts of a typewriting machine would be so patentable as to cover all other forms; but such a combination with another machine was not new. The Schulte device operates in its particular way to accomplish the stopping of the carriage of the typewriting machine at certain places; the Underwood mechanism accomplishes a similar result in a different way. Under such cir-

cumstances, the inventions are not the same, and a patent for one would not cover both.

In the latter of these cases it is urged that, as the inventions and patents of Gathright are the first to place the tabulating mechanism away from the feed dog, his patents should cover all such devices that include that feature of which the defendant's structure is one. This one common feature does not, however, make all combinations containing it the same. The patents will not cover the plan of tabulating in that way, but only the inventor's contrivances for carrying it out, and the defendant's means are so different from that inventor's that the use of them does not appear to be any infringement of either of the claims of his patents here involved. According to these views, the bill in each case must be dismissed.

Bills dismissed.